In the Matter of the Claim of JONATHAN ROLLE, Respondent, *v.* GENERAL FOODS CORPORATION, BIRDS EYE DIVISION, et al., Appellants, and SPECIAL FUND FOR REOPENED CASES, Respondent. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, June 27, 1963.

*Braiman & Braiman* (*Edward M. Braiman* of counsel), for appellants.

*Fix & Spindelman* for claimant-respondent.

*Louis J. Lefkowitz, Attorney-General (John J. Quinn* and *Daniel Polansky* of counsel), for Workmen's Compensation Board, respondent.

*George J. Barbero* and *John M. Cullen* for Special Fund for Reopened Cases, respondent.

GIBSON, J. Appeal is taken by an employer and its insurance carrier from decisions of the Workmen's Compensation Board, which, following the reopening of the case upon claimant's application, discharged the Special Fund for Reopened Cases from liability and made an award against the employer and carrier. The case is one of first impression.

On January 27, 1953, claimant, an alien, had a schedule award for past disability and for 214⅖ weeks in future at $28.07. He returned to his home in the Bahamas on September 28, 1953 and, pursuant to section 17 of the Workmen's Compensation Law, the future payments which he would otherwise have been entitled to receive for 178 weeks, to the aggregate amount of $4,996.46, were commuted as of the date of nonresidence by payment to him by the carrier on January 18, 1954 of $2,375.73, representing one half of the present value (as of Sept. 28, 1953) of the award, as required by section 17 and as computed by the board's actuary. The further award subsequently made and now appealed from was for disability from November 23, 1959.

Appellants contend that the award should have been against the respondent Special Fund as following an application made more than seven years after the date of the injury and more than three years from the date of the last payment of compensation (Workmen's Compensation Law, § 25-a, subd. 1). They assert that the date of such last payment was January 18, 1954, when the carrier paid the commuted award; and that subdivision 7 of section 25-a, providing, in the case of a lump sum payment, that "the date of last payment" shall be considered to be that to which the amount paid "would extend if the award had been made on the date the lump sum payment was approved at the maximum compensation rate * * * warranted by the employee's earning capacity", is inapplicable. In support of this contention, appellants argue that a "lump sum" payment requires the consent of the claimant and for that reason cannot be equated with the payment of a commuted schedule award pursuant to section 17, to which the claimant's consent is not required. This seems to us no basis whatsoever for the distinction urged. The payment of a commuted award is the payment of a "lump sum", in reason and in fact. The statute, in at least one instance, employs the terms interchangeably (see Workmen's Compensation Law, § 25, subd. 5, par. [b]; § 27,

subd. 5, par. [b]) and this we have found supportive of "the board's view that a commuted award is essentially the same as a lump sum payment" (*Matter of Pascucci* v. *Kennedy Constr. Co.,* 270 App. Div. 83, 87, motion for leave to appeal denied 295 N. Y. 991). In *Matter of Sayres* v. *Feine & Sons Co.* (283 App. Div. 547), in which we dealt, as we do here, with a commuted schedule award, we reaffirmed our conclusion as to the essential similarity of a commuted award and a lump sum settlement; and we find nothing in the language or purpose of section 17 which would warrant a distinction with respect to awards to aliens commuted pursuant to that section.

Thus, the board was correct in holding that in determining the question of limitations, subdivision 7 of section 25-a must be employed. The board erred, however, in the method of its application, in that it projected the award for the remaining 178 weeks' period during which the award would normally have run (computed from the date of claimant's departure from the United States), at one half of the $28.07 rate awarded, and thus arrived at the date of March 1, 1957, which was within three years of the filing of the application for reopening, whether by letter received December 24, 1959 or by formal application filed February 15, 1960. In our view, the award should, instead, have been extended at the rate originally fixed, with the result, of course, of reducing the projected period by one half, terminating at a time substantially more than three years prior to the reopening. Section 17 provides for payment, not of one half of the *rate,* but of one half of the commuted *amount,* and, indeed, authorizes no change in rate (cf. *Matter of Perino* v. *Lackawanna Steel Co.,* 241 N. Y. 312). Subdivision 7 of section 25-a, above quoted, provides for extension " at the maximum compensation rate which is warranted by the employee's earning capacity", such earning capacity being " as determined by the board under section fifteen". Clearly, the maximum rate warranted by claimant's earning capacity was that of $28.07 fixed by the award and not the $14.035 rate used by the board for purposes of mathematical computation; the board " determined " claimant's earning capacity at the time of the schedule award and at no other time; and the reduction of the lump sum payment to one half of the commuted amount was not caused by, or in any way related to any change in earning capacity but resulted solely from the mandate of section 17, applicable to aliens alone. Further, as was held in *Matter of Weyzk* v. *Town of Stafford* (7 N Y 2d 121, 124): " The statute requires the board to spread the lump sum settlement *at the rate applicable to the disability found* at the time of the approval of the lump sum settlement

by the Referee. (See *Matter of Courteau* v. *Buffalo Flour Mills,* 1 A D 2d 714.) '' (Here, of course, the lump sum payment was mandatory and did not require approval, and in this respect the provision of subdivision 7 is inoperative.) In *Weyzk,* the court continued (p. 124) : '' In short, it is the status of the disability, not the amount of the award that controls.'' That the operative effect of section 17 was upon the '' amount '' and did not and obviously could not have any relation to the '' disability '' is clear.

In view of the conclusions stated, it is not important to the issue here presented that the board apparently computed the extension upon the basis of one half of the $4,996.46 payments normally to be received, rather than one half of the commuted amount.

In opposition to the award itself, appellants contend that the board unreasonably denied the carrier's request to take the testimony of claimant, then in the Bahamas, on the issue of continued causal relation. Although our decision holding the Special Fund responsible may render that issue academic, we hold that, although ordinarily a request to examine a claimant would not be denied, such denial was warranted in the unusual circumstances of this case. The carrier's medical consultant not only reported '' obvious causal relationship '' but found it '' so obvious that I am sure that any established American orthopedic surgeon would feel competent to agree from an examination of this man's file and without an examination of the man himself.'' Causation was found by other medical experts and there was no medical or other proof in opposition. The request was made after many hearings, extending over a period of nearly two years, and after one appeal to the board, during all of which time the issue was open, but given little attention by the carrier. Even now, appellants indicate no specific proof to be elicited, stating in their brief merely that '' there may very well be some evidence '' against the causation found.

The decisions should be reversed, with costs to appellants against respondent Special Fund, and the case remitted to the Workmen's Compensation Board for further proceedings, including any necessary actuarial recomputations, not inconsistent with this opinion.

BERGAN, P. J., COON, HERLIHY and REYNOLDS, JJ., concur.

Decisions reversed, with costs to appellants against respondent Special Fund, and case remitted to the Workmen's Compensation Board for further proceedings, including any necessary actuarial recomputations, not inconsistent with the opinion herein.